UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS F. PERSON, JR., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. 1:14-cv-01053-TAB-RLY ) |
| CAROLYN W. COLVIN Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I. Introduction**

Plaintiff Thomas F. Person, Jr. appeals the Commissioner's denial of his claim for supplemental security income. Person argues on appeal that: (1) the ALJ erred in finding Person's combined impairments do not render him totally disabled; (2) the ALJ improperly failed to summon a medical advisor; and (3) the ALJ erroneously found Person was capable of performing work in the national economy. For the reasons set forth below, Person's brief in support of appeal [Filing No. 18] is denied.

**II. Discussion**

   *A.   Standard of review*

The Court must uphold the ALJ's decision if substantial evidence supports her findings. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The Seventh Circuit defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003). The ALJ need not address every piece of evidence or testimony presented, but must provide a "logical bridge" between the

evidence and her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). If evidence contradicts the ALJ's conclusions, she must confront that evidence and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

    B.    *Medical noncompliance*

Person first argues that substantial evidence does not support the ALJ's conclusion that Person was not disabled. [Filing No. 18, at ECF p. 10.] According to Person, the ALJ ignored evidence that his combined impairments of coronary artery disease with severe congestive heart failure, hypertension, shortness of breath, and significant activity intolerance rendered him totally disabled. [Filing No. 18, at ECF p. 10.] Specifically, Person asserts that the ALJ erroneously denied his claim on the basis that he was medically noncompliant without accounting for his inability to afford his medications. [Filing No. 29, at ECF p. 3.] Person concedes that the ALJ acknowledged he did not take his medications because he could not obtain the necessary funds for his co-pay, but argues that the ALJ's failure to consider Person's financial resources directly violated Social Security Ruling 82-59.

Social Security Ruling 82–59 excuses medication noncompliance for an "individual [who] is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable." 1982 WL 31384 (1982). The ruling further provides that the claimant must explore all possible resources (e.g., clinics, charitable and public assistance agencies, etc.) and document his contact with the resources. *Id.* "An absence of evidence that a claimant sought low-cost or free care may warrant discrediting his excuse that he could not afford treatment." *Mack v. Colvin*, No. 2:14-CV-00008-JMS-MJD, 2014 WL 4965569, *4 (S.D. Ind. Oct. 3, 2014) (citing *Buchholtz v. Barnhart*, 98 F. App'x 540, 546 (7th Cir. 2004)).

While the ALJ did not explicitly refer to Social Security Ruling 82-59, she discussed Person's financial constraint in her opinion. [Filing No. 12-2, at ECF p. 22.] The ALJ did not deny Person's application for supplemental security "because he was too poor to obtain needed medical treatment," as Person alleges. [Filing No. 18, at ECF p. 10.] On the contrary, the ALJ acknowledged that Person's medical noncompliance was due to a lack of funds. The ALJ noted that "there is some evidence of non-compliance with prescribed medications, but testimony established that financial issues prevented the claimant from obtaining his medication." [Filing No. 12-2, at ECF p. 22.] Indeed, Person's medical record contained two instances where Person met with social workers to obtain financial assistance for his medication: once in January 2012, and again in May 2012. [Filing No. 12-8, at ECF p. 13, 17.] Person asserts that he and the hospital social worker explored all possible community resources, but that he was still unable to afford his medications. [Filing No. 29, at ECF p. 3.] The ALJ mentioned that Person met with a social worker from Wishard Hospital to discuss financial assistance to purchase his medications. [Filing No. 12-2, at ECF p. 22; Filing No. 12-8, at ECF p. 13.] The ALJ also noted that Person's hospital admission for heart failure exacerbation was the result of Person's medication noncompliance, which was caused by his financial limitations. [Filing No. 12-2, at ECF p. 22; Filing No. 12-8, at ECF p. 17.]

The ALJ's discussion of Person's medical noncompliance was not the basis for her disability determination. Instead, the ALJ discussed Person's medical noncompliance in the context of her credibility determination, which is permissible. See Craft v. Astrue, 539 F.3d 668, 679 (7th Cir. 2008) ("In assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure."). The ALJ's discussion of Person's medical noncompliance was

one of many factors taken into consideration in making a credibility assessment. The ALJ considered medical treatment notes, which suggested "a higher level of functioning than [Person] alleged." [Filing No. 12-2, at ECF p. 21.] Specifically, the ALJ cited Dr. Ronald Mastouri's February 2012 finding that Person was able to walk 6 to 8 blocks without limitations. Person also denied any pain in his chest, arms, or jaw. At that time, Person did not report any shortness of breath on exertion. [Filing No. 12-2, at ECF p. 21; Filing No. 12-7, at ECF p. 114.] The ALJ also cited Person's testimony that he was able to use a vacuum, did his own laundry, washed dishes, cooked simple meals, rode in a car, and walked up and down stairs. [Filing No. 12-2, at ECF p. 22-23; Filing No. 12-2, at ECF p. 43, 47.] Thus, the context in which the ALJ discussed Person's medical noncompliance was not erroneous.

Notably, the ALJ did not hold Person's medication noncompliance against him in her RFC assessment. The ALJ acknowledged that Person's medication noncompliance exacerbated some of his symptoms, such as shortness of breath, some fluid build-up in his lungs, fatigue, and low energy levels. The ALJ made accommodations for these symptoms in her RFC assessment. She limited Person to sedentary work with occasional climbing of ramps and stairs, but never ladders, ropes or scaffolds; pushing/pulling with the bilateral upper extremities; avoiding concentrated exposure to extreme heat or cold and to environmental irritants. [Filing No. 12-2, at ECF p. 22.] Thus, the ALJ did not err in her discussion of Person's medical noncompliance. Remand is not warranted on this issue.

  C. *Failure to summon a medical advisor*

Person next challenges the ALJ's failure to summon a medical advisor to determine the medical equivalency of his combined impairments. Whether to summon a medical advisor is left to the judgment of the ALJ, if she believes she lacks sufficient information and it is necessary to

4

obtain expert opinions to adequately develop the record. *Clifford v. Apfel,* 227 F.3d 863, 873 (7th Cir. 2000). Person asserts that the ALJ used her layperson opinion instead of a medical expert in determining whether Person's impairments met or equaled a listing. [Filing No. 18, at ECF p. 13.] Specifically, Person argues that the ALJ could not reasonably rely on the opinions of the reviewing physicians because their reports were filed before Dr. Mastouri's evaluation on June 8, 2012, and therefore, they did not review the entire record. [Filing No. 18, at ECF p. 13.] Person contends that if the reviewing physicians had reviewed all of the evidence they would have determined that he was totally disabled. *Id.*

However, Dr. Mastouri's June 8, 2012, evaluation does not present any information that is significantly different from the rest of the medical record. Dr. Mastouri found:

> At the time of his last clinic visit, Mr. Person was in subacute congestive heart failure exacerbation due to medical noncompliance . . . Clinically, he is doing much better. He has not had any lower extremity edema. His weight is less as [sic] 11 pounds lower than his last clinic visit. He denied chest pain, arm pain, or jaw pain. He is trying to be more active.

[Filing No. 12-8, at ECF p. 20.] Such findings are consistent with those of Dr. J. Valentine Corcoran, the reviewing physician. On March 21, 2012, Dr. Corcoran determined that Person could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk about six hours in an eight-hour day, sit with normal breaks for about six hours in an eight-hour day, and push and pull without limitations. [Filing No. 12-7, at ECF p. 126.] Although Dr. Mastouri, Person's treating physician, did not make any explicit determinations regarding Person's ability to lift, sit, stand, push, or pull, he did find that Person's condition was improved, that Person was not experiencing pain, and that he was trying to be more active. [Filing No. 12-8, at ECF p. 20.] These findings are consistent with Dr. Corcoran's assessment of Person's abilities. On May 7,

2012, Dr. Jonathon Sands, another reviewing physician, affirmed Dr. Corcoran's assessment. [Filing No. 12-8, at ECF p. 11.]

Moreover, the ALJ adequately developed the record and did not rely entirely on Dr. Corcoran's March 21, 2012, report in finding that Person's impairments did not meet or equal a listing. The ALJ discussed Person's hospitalization for heart failure exacerbation, which occurred after Dr. Corcoran's review of Person's medical history. Person was admitted to the hospital on April 23, 2012, and was discharged two days later. The ALJ and Dr. Mastouri both noted that Person was hospitalized for failing to take his medication due to his financial circumstances. [Filing No. 12-8, at ECF p. 4; Filing No. 12-2, at ECF p. 22.] The ALJ also reviewed Dr. Mastouri's consultative notes dated May 16, 2012, which described the improvements that Person had made since his bypass operation and subsequent hospitalization. Dr. Mastouri found that Person's "preoperative echocardiogram showed a severely reduced left ventricular systolic function. A repeat echocardiogram at the time of his last clinic visit showed an ejection fraction of 46%, which was significant [sic] improved." [Filing No. 12-8, at ECF p. 17; Filing No. 12-2, at ECF p. 22.] This is consistent with Person's improvement described in Dr. Mastouri's June 8, 2012, report. The ALJ adequately developed the record without summoning a medical advisor. Remand is not warranted on this issue.

  D. *Jobs in the national economy*

Person's final issue on appeal relates to the ALJ's step-five determination that Person was not disabled because he could perform work in the national economy. Person contends that the ALJ's RFC assessment did not accurately describe his impairments. Person asserts that if the ALJ had properly considered his impairments they would preclude performance of all substantial gainful activity. [Filing No. 18, at ECF p.16.] Person's argument focuses on the fact that "there

6

was no medical evidence in the record which was contrary to the claimant's reported quite significant limitations in standing and walking." [Filing No. 18, at ECF p. 16.] This argument is unavailing.

The ALJ found that Person has the RFC to perform sedentary work with additional restrictions. [Filing No. 12-2, at ECF p. 21.] In making this assessment, the ALJ relied on an evaluation by Dr. Robert Bond, who found on November 1, 2011, that Person was able to "walk for several blocks at best" without chest pain. [Filing No. 12-7, at ECF p. 243.] The RFC assessment was further supported by Dr. Mastouri's report from February 24, 2012. The ALJ noted Dr. Mastouri's finding that Person was doing remarkably well since being discharged. Person lost a significant amount of weight and he was able to walk several blocks with no limitations. Furthermore, Person was not experiencing any pain in his arms, chest, or jaw. [Filing No. 12-7, at ECF p. 114.]

The RFC assessment not only accurately reflected the medical evidence, it incorporated more limitations than recommended by the reviewing physicians. [Filing No. 12-2, at ECF p. 22.] For example, Dr. Corcoran opined that Person could stand or walk up to six hours in an eight-hour day. [Filing No. 12-7, at ECF p. 126.] However, the ALJ limited Person to standing or walking up to two hours in an eight-hour day. [Filing No. 12-2, at ECF p. 20.] The ALJ reasoned that because Person was limited by his heart condition, obesity, and low ejection fraction percentage, sedentary work would be more appropriate than light work. In making this decision, the ALJ also relied on Person's testimony from the hearing that on bad days his activity levels were limited and he did not get out of his recliner, except to get water and to take his medications. [Filing No. 12-2, at ECF p. 22, 44.] Thus, the ALJ supported her RFC with substantial evidence.

To determine what jobs were available in the national economy, the ALJ asked a vocational expert questions based on her RFC assessment.  The vocational expert testified that an individual with similar capabilities to that of Person would be able to work as a sorting machine operator, polishing machine operator, or a rotor assembler.  [Filing No. 12-2, at ECF p. 24, 66.]  This testimony went unchallenged at the hearing and the ALJ appropriately relied on it in concluding that Person was capable of performing work in the national economy.  The ALJ's step-five finding is not erroneous.  Thus, the Court finds remand on this issue is inappropriate.

**III. Conclusion**

For these reasons, Plaintiff's brief in support of appeal [Filing No. 18] is denied and the Commissioner's decision affirmed.

Date:  6/29/2015

_____
Tim A. Baker
U.S. Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov